UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
PEDRO TORRES,

                Petitioner,

              - against -

STEVEN E. RACETTE, Superintendent,
Elmira Correctional Facility,

                Respondent.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
11-CV-1647 (PKC)

PAMELA K. CHEN, United States District Judge:

Pedro Torres ("Petitioner" or "Torres"), proceeding *pro se*, petitions this Court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, challenging his March 31, 2008 conviction for second-degree assault following a jury trial in the Supreme Court of New York, Kings County. Petitioner asserts that he was denied due process and a fair trial based on: (1) the police officers' bolstering of the eyewitness's identification; and (2) the prosecutor's remarks on summation. For the reasons stated below, the petition is denied in its entirety.

**BACKGROUND**

**I.    FACTS**

On April 1, 2007, Andy Morales ("Morales") worked an evening shift at the Lucky Sevens Restaurant. After work, Morales met up with friends at the El Pariso Restaurant ("El Pariso") in Brooklyn, New York. (T. 26-28, 34.)[1] At around 8:30 a.m. the next morning, as Morales was leaving El Pariso, someone "hugged" him from behind and stabbed him in the left side of his chest with a knife. (T. 35, 52.) During the attack, Morales saw the right side of the assailant's face and

---

[1] "T." refers to the transcript of Petitioner's jury trial from March 25, 2008 to March 31, 2008. (Dkt. 4-2, 4-3, 5-2, and 5-3.)

later identified him as Petitioner. (T. 44-45.) Morales did not know Petitioner and, during the attack, asked Petitioner in Spanish, "Why me?" (T. 35, 45, 66, 160.) The stabbing punctured Morales's lung and caused cardiac arrest, but he survived after being transported to a hospital. (T. 48-49.)

Hector Rodriguez went to El Pariso around 1:00 a.m. on the morning of the stabbing. (T. 153, 156-57.) He saw Petitioner in the restaurant and found Petitioner's behavior in El Pariso suspicious because Petitioner was "[w]alking around the restaurant" and "looking at people wrong." (T. 171.) Rodriguez left El Pariso around 7:30 a.m. or 8:00 a.m. (T. 158.) While standing outside, he observed Petitioner "bear hug[]" Morales from behind and then stab him. (T. 175-76.) After stabbing Morales, Petitioner approached Rodriguez and swung at him with a boxcutter. (T. 176-78.) Petitioner missed Rodriguez and fled the scene. (T. 161.) Rodriguez followed Petitioner to the corner of Rodney Street, but decided to return to Morales and seek the help of police. (T. 161-64, 180.)

At 8:36 a.m. on April 2, 2007, Police Officer Raul Santos and his partner, Officer Sabrina Fulford arrived at the scene. Rodriguez described the assailant as a Hispanic male, about 180 pounds, 5'5" tall, and wearing a white T-shirt and light blue jeans. (T. 88.) Rodriguez pointed in the direction that Petitioner ran and identified a sweater that he had seen Petitioner discard. (T. 90, 175-76.)[2] Police Officer Annette Francis also received a call to respond to the crime scene and a description of the suspect. (T. 125-26.) Officer Francis then began to canvass the area and

---

[2] Later, Detective John Entenmann took the sweater and a knife from the crime scene and took a blood swab from the knife and from Petitioner's jeans. (T. 247-49, 259, 263.) The prosecution did not test the blood on these items before trial because the victim survived. (T. 307.) The prosecution tested the blood swab from the jeans after the jury verdict, however, and the swab matched Morales's blood. (S. 3.) "S." refers to the transcript of Petitioner's sentencing on April 29, 2008. (Dkt. 5-3.)

2

noticed Petitioner, who matched Rodriguez's description, five blocks from the scene. (T. 126-27.) Officer Francis and her partner stopped Petitioner, and Rodriguez was brought where Petitioner was being detained to do a show-up identification. (T. 168-69.) Rodriguez identified Petitioner as the assailant. (T. 127, 169.) Officer Santos then placed Petitioner under arrest. (T. 92, 128.)

## II. PROCEDURAL HISTORY

### A. Trial, Verdict, and Sentencing

Petitioner's jury trial was held from March 25, 2008 to March 31, 2008 in the Supreme Court of the State of New York, Kings County. (Affidavit of Thomas Ross ("Thomas Aff."), Dkt. 3, at ¶ 7.) The victim, Morales, and the eyewitness, Rodriguez, as well as Officers Fulford, Santos, and Francis testified during the trial. (T. 22 (Morales); T. 146 (Rodriguez); T. 68 (Fulford); T. 81 (Santos); T. 122 (Francis).) The court submitted to the jury one count each of first-degree assault and second-degree assault. (T. 370-72.) On March 31, 2008, the jury found Petitioner guilty of second-degree assault. (T. 387.) On April 29, 2008, the court sentenced Petitioner to six years' imprisonment to be followed by three years of post-release supervision. (S. 9.)

### B. Direct Appeal

Petitioner appealed his conviction, through counsel, to the Appellate Division, Second Department, claiming that he was denied due process and a fair trial because: (1) police testimony bolstered the eyewitness's identification; and (b) the prosecutor's remarks on summation appealed to the jury's sympathy for the complainant, invited animosity toward Petitioner, and denigrated the defense. (*See generally* Petitioner's Appellate Brief, Dkt. 3-2.) Petitioner argued in the alternative that if the Appellate Division declined to reverse, it should reverse on the grounds that Petitioner was denied the effective assistance of counsel. (*See id.* at 24.)

On March 23, 2010, the Appellate Division affirmed Petitioner's conviction and held that both of Petitioner's claims were unpreserved for appellate review, since he had failed to object to the complained-of testimony and remarks at trial. *People v. Torres*, 896 N.Y.S.2d 875, 875 (App. Div. 2010).[3] In the alternative, the Appellate Division held that the admission of the police testimony into evidence did not require reversal, and that the challenged remarks during summation "were within the broad bounds of rhetorical comment permissible in closing arguments, fair comment on the evidence, or responsive to arguments and theories presented in the defense summation." *Id.*

The Court of Appeals denied Petitioner's leave to appeal on June 11, 2010. *People v. Torres*, 906 N.Y.S.2d 831 (2010).

**C. Instant *Habeas* Petition**

On March 30, 2011, Petitioner timely submitted the instant petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. (Dkt. 1.)[4] Petitioner raises the same two grounds for relief as he did in his direct appeal. (*Id.* at 5, 9.)

**STANDARD OF REVIEW**

Section 2254 provides that a *habeas corpus* application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination

---

[3] The Appellate Division did not address the claim of ineffective assistance in its decision. *See id.*

[4] Petitioner was paroled on June 24, 2014. (Dkt. 6.) However, Petitioner was "incarcerated . . . at the time the petition was filed, which is all the 'in custody' provision of 28 U.S.C. § 2254 requires." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

4

of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Norde v. Keane,* 294 F.3d 401, 410 (2d Cir. 2002) (internal quotation marks and citation omitted).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Howard v. Walker,* 406 F.3d 114, 122 (2d Cir. 2005) (internal quotation marks and citation omitted). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" Supreme Court cases, or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Penry v. Johnson,* 532 U.S. 782, 792 (2001) (citation omitted).

A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* (citation omitted). AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams v. Taylor,* 529 U.S. 362, 411 (2000)). The Second Circuit has added that, while "[s]ome increment of incorrectness beyond error is required[,] . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact

and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello,* 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner,* 459 F.3d 200, 203 (2d Cir. 2006)).

## DISCUSSION

In this case, Petitioner raised both claims of denial of due process and a fair trial on direct appeal to the Appellate Division and in his petition seeking review by the New York Court of Appeals. (Thomas Aff. ¶¶ 9-14.) Thus, Petitioner has properly exhausted his state law remedies with respect to the claims asserted in the instant petition. However, Petitioner's claims, though timely, are procedurally defaulted, and even assuming they are not procedurally barred, they are not cognizable on *habeas* review.

## I. Petitioner's Claims are Procedurally Defaulted

### A. Standard

Under 28 U.S.C. § 2254, the Court need not consider the merits of any claim that is procedurally defaulted. *Harrington v. Richter*, 562 U.S. 86, 103 (2011). A federal court generally is precluded from reviewing a *habeas* claim if the State court's prior denial of that claim rests on an adequate and independent state ground. *See, e.g., Harris v. Reed*, 489 U.S. 255, 262 (1989); *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977). A petitioner's failure to comply with a state procedural rule qualifies as an adequate and independent state ground, provided that (i) the State court actually "relied on the procedural bar as an independent basis for its disposition of the case," *Harris*, 489 U.S. at 261-62 (internal quotation marks and citation omitted), and (ii) the State procedural rule is "firmly established and regularly followed," *Cotto v. Herbert*, 331 F.3d 217, 239-40 (2d Cir. 2003). A State court's express reliance on a procedural ground as one basis for the denial of the claim precludes *habeas* review, even if the State court proceeds to consider the merits of the claim. *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996); *see Jackson v. Conway*,

763 F.3d 115, 133 (2d Cir. 2014) (stating that "[t]he preclusion of federal review applies only when the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar") (citation omitted).

A petitioner, nevertheless, may obtain federal *habeas* review of a procedurally-defaulted claim, if the petitioner demonstrates either "cause for the default and actual prejudice," or that "failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 748-50 (1991)). To establish cause for a procedural default, a petitioner must show "some objective factor external to the defense" that explains why he did not previously raise the claim. *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show prejudice, a petitioner must demonstrate that the failure to raise the claim previously had a substantial injurious effect on the petitioner's case such that he was denied fundamental fairness. *Reyes v. New York*, No. 99-CV-3628 (SAS), 1999 WL 1059961, at *2 (S.D.N.Y. Nov. 22, 1999) (citing *Murray*, 477 U.S. at 494). The miscarriage of justice exception is applicable where "a petitioner supplements a constitutional claim with a 'colorable showing of factual innocence.'" *McCleskey v. Zant*, 499 U.S. 467, 495 (1991) (quoting *Kuhlman v. Wilson*, 477 U.S. 436, 454 (1986)).

### B. Petitioner's Claims

The Appellate Division found that Petitioner's bolstering claim and his summation claim were unpreserved for appellate review because Petitioner failed to contemporaneously object to the alleged bolstering testimony and improper summation comments. *Torres*, 896 N.Y.S.2d at 875. New York's contemporaneous objection rule provides that "a party seeking to preserve a claim of error at trial must lodge a protest to the objectionable ruling 'at the time of such ruling . .

. or at any subsequent time when the [trial] court had an opportunity of effectively changing the same.'" *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quoting N.Y. Crim. Proc. Law § 470.05(2)). An objection is preserved if "the objecting party (1) made his or her position regarding the ruling known to the trial court; (2) made a protest, and the trial court 'expressly decided the question raised on appeal'; or (3) 'without success . . . either expressly or impliedly sought or requested a particular ruling.'" *Downs v. Lape*, 657 F.3d 97, 102-03 (2d Cir. 2011) (quoting N.Y. Crim. Proc. Law § 470.05(2)).

In the instant case, Petitioner did not object to the allegedly improper bolstering testimony or summation remarks, and, therefore, pursuant to New York Criminal Procedure Law § 470.05(2), both of Petitioner's claims are unpreserved. *See People v. Romero*, 7 N.Y.3d 911 (2006) (finding summation claim unpreserved); *People v. Love*, 57 N.Y.2d 1023 (1982) (finding bolstering claim unpreserved). Since the Appellate Division "expressly based its determination on a State procedural rule" that is firmly established and regularly followed, it "constitutes an independent and adequate ground that bars federal *habeas* relief." *Ortiz v. Rock*, No. 09-CV-679 (PKC), 2016 WL 6068808, at *5 (E.D.N.Y. Oct. 13, 2016) (citing *Harris*, 489 U.S. at 260-61).

Furthermore, Petitioner's claims do not qualify for either exception to the procedural default rule. Petitioner has not shown cause or prejudice for his failure to preserve his claims, and has not demonstrated that the procedural default would result in a fundamental miscarriage of justice.[5] Although Petitioner asserted a claim of ineffective assistance of trial counsel based on the failure to object on both grounds alleged here and exhausted his claim in State court, Petitioner has not brought that claim to this Court.

---

[5] As to the miscarriage of justice exception, Petitioner does not make a showing of factual innocence in his *habeas* petition. (*See* Dkt. 1); *see also McCleskey*, 499 U.S. at 495.

Therefore, the Court is precluded from reaching the merits of Petitioner's bolstering and improper summation claims.

## II. Petitioner's Claims are Not Cognizable on Federal *Habeas* Review

Even assuming Petitioner's claims are not procedurally barred, they are not cognizable on federal *habeas* review.

### A. Bolstering of Eyewitness's Identification

Petitioner claims that he was denied due process and a fair trial by the police officers' bolstering of Rodriguez's identification of Petitioner. (Dkt. 1, at ECF 5.)[6] Specifically, Petitioner claims that Officer Santos and Officer Francis improperly testified at trial about Rodriguez's identification of Petitioner at the show-up identification. (Dkt. 3-2 at ECF 18-19.)

Bolstering of an identification is a matter of state evidentiary law. *See Heath v. Lavalley*, No. 11–CV–02962 (ERK), 2014 WL 4954658, at *2 (E.D.N.Y. Oct. 2, 2014); *Villafane v. Artus,* No. 09–CV–5545 (SJF), 2011 WL 6835029, at *31 (E.D.N.Y. Nov. 17, 2011). "[A] state court's evidentiary rules, even if erroneous under state law, do not present constitutional issues cognizable under federal habeas review." *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 73 (2d Cir. 2011). Courts in this circuit have repeatedly held that "the concept of 'bolstering' really has no place as an issue in criminal jurisprudence based on the United States Constitution." *Castaldi v. Poole,* No. 07–CV–1420 (RRM), 2013 WL 789986, at *7 (E.D.N.Y. Mar. 1, 2013) (internal quotation marks and citations omitted); *see Clanton v. Lee*, No. 14-CV-6024 (BMC), 2015 WL 5693718, at *2 (E.D.N.Y. Sept. 27, 2015) (collecting cases); *Lebron v. Sanders,* 02-CV-6327 (RPP), 2008 WL 793590, at *20 (S.D.N.Y. Mar. 25,

---

[6] Citations to "ECF" pages refer to the page numbering of the Electronic Court Filing ("ECF") system, and not the document's internal page numbers.

2008) (holding that a violation of New York's "bolstering" rule does not rise to a constitutional level). However, a court may review a claim by a petitioner that an alleged state-law question was "of constitutional dimension" and deprived him of "fundamental fairness." *Wilson v. Van Buren*, No. 07-CV-3567 (LAK)(FM), 2010 WL 3260461, at *9 (S.D.N.Y. July 19, 2010) (quoting *Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir. 1988)). "For an evidentiary error to rise to this level, it must have had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993)).

In the present case, neither of the police officers' testimonies complained of by Petitioner "so infused the trial with unfairness as to deny due process of law." *Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (quoting *Lisenba v. California*, 314 U.S. 219, 228 (1941)). At trial, the victim, Morales, and the eyewitness, Rodriguez, provided sufficient independent identification testimony to allow a reasonable jury to convict Petitioner. Morales identified Petitioner in court and testified that he saw the side of Petitioner's face during the assault. (T. 44-45.) Rodriguez, saw Petitioner in El Pariso before the stabbing, saw Petitioner's face during the stabbing, saw Petitioner from two feet away when Petitioner swung the boxcutter at him, and saw Petitioner while chasing him down the block. (T. 171-78, 180.) Rodriguez also clearly described the suspect to Officer Santos as 5'4" or 5'5," "male," "Hispanic," "180 pounds," and wearing a "white shirt" and "light blue pants", and pointed in the direction that Petitioner ran from the scene. (T. 88-89, 166-67.) Both Morales's and Rodriguez's testimonies presented strong identification evidence, such that the alleged bolstering evidence did not have a substantial or injurious effect or influence on the jury's verdict.

In addition, the alleged bolstering testimony did not unfairly affect the outcome of the trial because it served as a narrative of events and helped the jury understand why the officers arrested

Petitioner. *See Taveras v. Artus*, No. 09–CV–3716 (CBA), 2012 WL 2872125, at *5 (E.D.N.Y. July 10, 2012) (denying bolstering claim where "the testimony appropriately corroborated the victim's recollections . . . and completed the narrative of what occurred on the street that evening"). Officer Santos's testimony was necessary to complete the narrative so that the jury would know the basis for the arrest as well as when and where Petitioner was arrested, *i.e.*, a short time after the stabbing and only five blocks from the scene. The court also specifically instructed the jury that what Rodriguez told Officer Santos before the arrest should not be interpreted as evidence, but was being admitted to help the jury understand why Officer Santos did what he did. (T. 88-89.) In light of the evidence and the court's limiting instruction, the alleged bolstering testimony did not deprive Petitioner of a fair trial.

Therefore, Petitioner is not entitled to *habeas* relief on this ground.

### B. Prosecutor's Summation Remarks

Petitioner argues that he was denied due process and a fair trial by the prosecutor's remarks on summation, which Petitioner argues appealed to the jury's sympathy for the complainant, invited animosity towards Petitioner, and denigrated the defense. (Dkt. 1, at ECF 9.) Specifically, Petitioner asserts that the prosecutor made several improper remarks in summation, including repeating words, such as "porque yo"[7] and "why me", as if they were the victims' actual words (T. 336), and urged the jury to consider Morales's feelings and thoughts, both during the incident and upon seeing Petitioner in court (*id.*; Dkt. 1, at ECF 10-11.). Petitioner states that the prosecutor told jurors not to go to the "scary place" of Petitioner's mind and commented on Petitioner's "audacity", "balls", and "cold[ness]" in carrying out his actions (T. 361), urged jurors to exercise their oaths as jurors and convict Petitioner (T. 360-61), characterized Petitioner's counsel's

---

[7] "Porque yo" means "Why me?" in Spanish.

arguments about misidentification as "distractions" (T. 338-39, 341, 344-46), and described Petitioner's choice to sit among family members during the complainant's testimony as a game of "Where is Waldo" (T. 349-50). Further, Petitioner claims that the prosecutor improperly reminded the jury that Morales had recently immigrated to the United States, "looking for the American dream", and had a young family to support. (T. 340.)

Despite finding this claim unpreserved for appellate review, *Torres*, 896 N.Y.S.2d at 875, the Appellate Division addressed the merits, finding that "most of the challenged remarks were within the broad bounds of rhetorical comment permission in closing arguments, fair comment on the evidence, or responsive to arguments and theories presented in the defense summation," and that "[a]ny error resulting from the remaining challenged remarks was harmless", *id.* This decision was not contrary to established federal law or an unreasonable application of clearly established Supreme Court precedent. Nor was it an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Prosecutors are permitted broad latitude during summation and are permitted to respond to arguments by the defense "impugning the integrity of [their] case." *United States v. Bautista*, 23 F.3d 726, 732 (2d Cir. 1994); *see also United States v. Tocco*, 135 F.3d 116, 130 (2d Cir. 1998). The appropriate standard of review for a *habeas* petition involving prosecutorial misconduct is "the narrow one of due process, and not the broad exercise of supervisory power." *Floyd v. Meachum,* 907 F.2d 347, 353 (2d Cir.1990) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)) (internal quotations marks and citation omitted). A claim of prosecutorial misconduct during summation requires a court to consider "whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 644 (1974)). The petitioner

must show that he "suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994). To determine whether the petitioner suffered such prejudice, a court must consider: "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prejudicial conduct." *Id.* (citing *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991)).

Here, the prosecutor's invocation of Morales's words, "porque yo" and "why me", do not rise to the level of prosecutorial misconduct. A prosecutor is "to be afforded the widest latitude by way of comment, denunciation or appeal in advocating his cause." *Moses v. Senkowski*, No. 01-CV-4423 (SJ), 2004 WL 1242511, at *12 (E.D.N.Y. May 28, 2004) (quoting *People v. Ashwal*, 39 N.Y.2d 105, 109 (1976)); *see also Francis v. Conway*, No. 09-CV-3391 (BMC), 2010 WL 23327, at *7 (E.D.N.Y. Jan. 5, 2010) ("For purposes of federal *habeas corpus* review, a prosecutor has wide latitude in making his closing argument."). The prosecutor, however, must "stay within the four corners of the evidence." *Wells v. Brown*, No. 06-CV-857 (CBA), 2008 WL 2097612, at *8 (E.D.N.Y. May 15, 2008) (citation and internal quotation marks omitted). In this case, the prosecutor's remarks, "porque yo" and "why me," referred to evidence introduced during Morales's and Rodriguez's testimony, and the prosecutor had latitude to comment on this evidence during her summation. (*See* T. 35, 160.) Additionally, the prosecutor's remarks about Morales's recent immigration, her description of him as a hard-working immigrant, and his thoughts and feelings during the stabbing were responsive to defense counsel's summation attacking Morales's credibility because he stayed out late and drank ten beers over three hours. (T. 315.) The prosecutor's remarks constitute an appropriate response to defense counsel's summation, and were

13

therefore not improper. *See Bryson v. Sheahan*, No. 11-CV-749 (SJF), 2013 WL 5502835, at *33 (E.D.N.Y. Oct. 1, 2013) (summation remarks not improper because they constituted fair comment upon the evidence and were responsive to comments made by defense counsel). Additionally, the prosecutor's remarks characterizing defense counsel's arguments as "distractions" were not inappropriate, in light of defense counsel characterizing the prosecution's arguments and evidence as "absurd" and "not credible." (T. 321, 333, 340); *see Hirsch v. Plescia,* No. 03-CV-1617 (DLI), 2005 WL 2038587, at *6 (E.D.N.Y. Aug. 23, 2005) ("Comments made by the prosecutor that defense counsel was misleading the jury or distorting the facts were not overly inappropriate, considering that the prosecutor was responding to similar comments from defense counsel." (citing *United States v. Clark*, 613 F.2d 391, 405 (2d Cir. 1979)).

Finally, the prosecutor's comments regarding Petitioner's "audacity," "balls," and "cold[ness]" do not rise to a level that would warrant *habeas* relief. *See Stewart v. Lee*, No. 09-CV-4374 (ENV), 2014 WL 3014608, at *5 (E.D.N.Y. July 3, 2014) ("In the particular context of a challenged summation, [a] *habeas* petitioner must show not simply that the particular summation comment was improper, but that the comment, viewed as against the entire argument to the jury, and in the context of the entire trial, was so severe and significant as to have substantially prejudiced him.") (citing *United States v. Williams,* 690 F.3d 70, 75 (2d Cir. 2012)). Here, the prosecutor's comments, taken as a whole, did not substantially prejudice Petitioner. The prosecution's case rested largely on Morales's and Rodriguez's testimony, their credibility, and their identification of Petitioner, and the prosecutor's remarks about the brazenness and depravity of the alleged misconduct were not likely to have substantially influenced the jury's verdict. Petitioner's claim that his trial was rendered unfair by the prosecutor's misconduct, therefore, has no merit.

Therefore, Petitioner's application for *habeas* relief on this ground is denied.

## CONCLUSION

For the reasons set forth above, the petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 is denied. Petitioner Torres is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Middleton v. Att'ys Gen.,* 396 F.3d 207, 209 (2d Cir. 2005) (denying certificate of appealability where petitioner has not shown that "reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks and citation omitted). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: October 2, 2018
Brooklyn, New York